# Exhibit 2

# Agreement for Teaming Arrangement between Iowa Student Loan and MOHELA, dated June 11, 2015

## AGREEMENT FOR TEAMING ARRANGEMENT TO SERVICE STUDENT LOANS PURSUANT TO FSA'S SOLICITATION (NFP-RFP-2010) AND MOHELA'S CONTRACT WITH FSA

THIS "AGREEMENT FOR TEAMING ARRANGEMENT TO SERVICE STUDENT LOANS PURSUANT TO FSA'S SOLICITATION (NFP-RFP-2010) AND MOHELA'S CONTRACT WITH FSA" (this "Agreement") is entered into this 11th day of June, 2015, by and between Iowa Student Loan Liquidity Corporation, a non-profit corporation organized pursuant to the laws of the state of Iowa ("Servicer"), and the Higher Education Loan Authority of the State of Missouri, a public instrumentality and body politic and corporate of the State of Missouri ("MOHELA").

## RECITALS

WHEREAS, Section 2212 of the Health Care and Education Reconciliation Act of 2010, Public Law 111-152 (H.R. 4872) (the "HCERA") provides that the Secretary of the United States Department of Education (the "Secretary") shall contract with each eligible not-for-profit servicer ("Eligible NFP Servicer") to service certain federal assets, including federally owned student loans; and

WHEREAS, Section 2212 of the HCERA sets forth certain requirements for determining if an entity is an Eligible NFP Servicer and the United States Department of Education, Office of Federal Student Aid ("FSA") has further clarified the requirements for Eligible NFP Servicers by issuing a Sources Sought Notice (NFP-SS-2010) on April 29, 2010 (the "Sources Sought Notice"), and a Solicitation (NFP-RFP-2010) on September 29, 2010 (including subsequent amendments and changes thereto, the "Solicitation"); and

WHEREAS, FSA has determined that MOHELA and Servicer are Eligible NFP Servicers as defined in Section 2212 of the HCERA, the Sources Sought Notice, and the Solicitation; and

WHEREAS, on September 27, 2011, MOHELA and FSA entered into a contract pursuant to the terms of the Solicitation (Contract No. ED-FSA-11-D-0012) (the "MOHELA Contract") (a true and accurate copy of the MOHELA Contract is attached hereto as Exhibit A and is incorporated by reference as if fully set forth herein); and

WHEREAS, Section 2212 of the HCERA and the Solicitation further provide that, subject to certain terms and conditions, each Eligible NFP Servicer shall receive an initial allocation of the servicing rights for a minimum of 100,000 student loan borrower accounts (the "Initial Allocation") and an ongoing allocation of student loan borrower accounts subsequent to the Initial Allocation (the "Ongoing Allocation"), provided that any Ongoing Allocation shall be subject to the Eligible NFP Servicer meeting certain performance measurement criteria as set forth in the Solicitation; and

WHEREAS, pursuant to Section 2212 of the HCERA, the Solicitation, and the MOHELA Contract, MOHELA has received an Initial Allocation from FSA ("MOHELA's Initial Allocation"); and

WHEREAS, pursuant to Section 2212 of the HCERA and the Solicitation, Servicer has received an Initial and Ongoing Allocations from FSA ("Servicer's Transferred Allocation");

WHEREAS, Section B.13.N.3 of the Solicitation and Sections A.1 and B.12.N.3 of the MOHELA Contract set forth pricing terms and conditions that include servicing fees to be paid on serviced accounts ("Contract Servicing Fees"); and

WHEREAS, the Solicitation and the subsequent written guidance issued by FSA provide that an Eligible NFP Servicer may enter into a "teaming arrangement" with one or more other Eligible NFP Servicers and affiliated entities (as defined in Section 2212 of the HCERA) for servicing accounts allocated pursuant to the Solicitation, subject to certain terms and conditions, including the condition that one Eligible NFP Servicer shall be designated as the prime contractor and the other team member(s) shall be designated as subcontractors of the prime contractor; and

WHEREAS, Servicer has previously entered into a teaming arrangement with four other Eligible NFP Servicers (collectively the "Aspire Team") whereby Aspire Resources, Inc. ("Aspire") is the prime contractor and Servicer acted as a subcontractor (the "Aspire Teaming Arrangement"); and

WHEREAS, the Aspire Teaming Arrangement will be terminated and dissolved upon receipt of approval from FSA of the transfer of the Initial and Ongoing Allocations of the Aspire Team pursuant to the terms of this Agreement; and

WHEREAS, MOHELA and Servicer desire to enter into a teaming arrangement pursuant to the terms of the Solicitation, FSA's subsequent written guidance, and the MOHELA Contract, whereby MOHELA is the prime contractor and Servicer is a subcontractor of MOHELA, subject to the terms and conditions of this Agreement as set forth below;

NOW, THEREFORE, in consideration of the above Recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby covenant and agree as follows:

1. **Status as Eligible NFP Servicer.** Each party hereto represents and warrants that it has been designated by the Secretary and FSA as an Eligible NFP Servicer as defined in Section 2212 of the HCERA, the Sources Sought Notice, and the Solicitation.

2. **Teaming Arrangement.** The parties hereto hereby agree to form a teaming arrangement as described in Section D.2 of the Solicitation whereby MOHELA is the prime contractor and Servicer is a subcontractor of MOHELA. Servicer understands and agrees that MOHELA may, in its sole discretion, enter into similar teaming arrangements with other Eligible NFP Servicers and affiliated entities (as defined in Section 2212 of the HCERA). For purposes of this Agreement, MOHELA's teaming arrangement with Servicer and any other Eligible NFP Servicers or affiliated entities shall be referenced collectively as the "MOHELA Team."

3. <u>**Transfer of Accounts.**</u> As of the Effective Date of this Agreement (as defined in Section 6 hereof), approximately 400,000 federal Direct Loan accounts are subject to the Aspire Teaming Arrangement (the "Aspire Team Accounts"). Aspire, as the prime contractor, intends to seek approval from FSA to transfer the Aspire Team Accounts to MOHELA for servicing. If Servicer does not receive such approval from FSA, this Agreement shall be null and void without any liability accruing to either party. This Agreement shall constitute a transfer by Servicer to MOHELA upon receipt of approval from FSA of the transfer of the Aspire Team Accounts pursuant to the terms set forth herein.





7.   [Reserved]

8.   <u>Representations, Warranties and Covenants of Servicer and MOHELA</u>. Servicer and MOHELA represent and warrant that:

(a) Servicer and MOHELA are duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and are duly qualified to do business in all jurisdictions in which the nature of the business conducted by it makes such qualification necessary.

(b) During the term of this Agreement, except as provided in this subsection, neither Servicer nor MOHELA will dissolve or otherwise dispose of all or substantially all of its assets. If Servicer or MOHELA consolidates with or merges into any other entity or permits one or more other entities to consolidate or merge into it the surviving entity or transferee shall be an Eligible NFP Servicer and shall, with the prior written consent of the other party, which consent shall not be unreasonably withheld, assume in writing all of the obligations under this Agreement.

(c) Servicer and MOHELA are, and will continue to be at all times during the term of this Agreement, Eligible NFP Servicers.

(d) No payment, whether in the form of money, property, services or other forms of consideration, has been made or will be made by or on behalf of Servicer or MOHELA for the direct or indirect benefit of any member, employee, officer, director

4

or agent of the other party whether in connection with, arising out of, or in any way relating to this Agreement.

(e) None of the execution and delivery of this Agreement, the consummation of the transactions herein contemplated or the compliance with the provisions hereof will violate any of the provisions of any indenture, agreement, document, instrument or understanding to which Servicer or MOHELA is a party or subject, or by which Servicer or MOHELA is bound, or conflict with or constitute a default thereunder. Servicer expressly warrants that, except for its contract with Aspire, it is not a party to any contract, subcontract, understanding, or other agreement with any entity relative to the Solicitation or the servicing of federal assets, including federally owned student loans.

(f) Servicer and MOHELA will comply with all federal, state, local and international laws and rules, practices, regulations, regulatory guidances, standards and orders applicable to any obligations or duties arising out of this Agreement.

9. **Communications with FSA and Key Subcontractors.** MOHELA shall be solely responsible for all communications with FSA and its representatives, and with MOHELA's Key Subcontractors (as defined in Section B.13.N.15 of the Solicitation and Section B.12.N.15 of the MOHELA Contract), including the Pennsylvania Higher Education Assistance Agency ("PHEAA") and any entity that is a member of the MOHELA Team, relative to this Agreement, Servicer's Transferred Allocation, and the teaming arrangement between MOHELA and Servicer. Servicer shall not, without MOHELA's prior written approval, initiate any communication, either verbally or in writing, with FSA or its representatives or with any of MOHELA's Key Subcontractors relative to this Agreement, Servicer's Transferred Allocation, or the teaming arrangement between MOHELA and Servicer. If at any time Servicer receives any communication, either verbally or in writing, from FSA or its representatives or from any of MOHELA's Key Subcontractors relative to this Agreement, Servicer's Transferred Allocation, or the teaming arrangement between MOHELA and Servicer, Servicer shall immediately notify MOHELA, in writing, of the source and substance of such communication. For purposes of this Section 9, "Servicer" shall include Servicer and its shareholders, subsidiaries and affiliates and their respective directors, officers, employees and agents.

10. **Indemnification.**

(a) To the extent permitted by law, Servicer hereby agrees to defend, indemnify and hold harmless MOHELA and its subsidiaries and affiliates and their respective members, directors, officers, employees and agents, and the successors and assigns of each of the foregoing (individually, a "MOHELA Indemnified Party" and collectively, the "MOHELA Indemnified Parties") from and against any and all claims, demands, suits, settlements, damages, losses, liabilities, costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, paid or incurred by, or asserted against, any MOHELA Indemnified Party relating to or arising out of or in connection with (i) the breach of any representation or warranty made by Servicer in

5

this Agreement, (ii) the negligence or willful misconduct of Servicer or any of its shareholders, subsidiaries or affiliates or any of their respective directors, officers, employees and/or agents in connection with the performance of any of Servicer's rights, obligations or duties under this Agreement, and/or (iii) any breach of this Agreement by Servicer.

(b) To the extent permitted by law, MOHELA hereby agrees to defend, indemnify and hold harmless Servicer and its shareholders, subsidiaries and affiliates and their respective directors, officers, employees and agents, and the successors and assigns of each of the foregoing (individually, a "Servicer Indemnified Party" and collectively, the "Servicer Indemnified Parties") from and against any and all claims, demands, suits, settlements, damages, losses, liabilities, costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, paid or incurred by, or asserted against, any Servicer Indemnified Party relating to or arising out of or in connection with (i) the breach of any representation or warranty made by MOHELA in this Agreement, (ii) the negligence or willful misconduct of MOHELA or any of its subsidiaries or affiliates or any of their respective members, directors, officers, employees and/or agents in connection with the performance of any of MOHELA's rights, obligations or duties under this Agreement, and/or (iii) any breach of this Agreement by MOHELA.

11.   **Limitation of Liability.**   Notwithstanding any provision contained in this Agreement to the contrary, except (a) in connection with a violation of Section 12 (Confidentiality) of this Agreement, (b) to the extent caused by the gross negligence or willful misconduct of such party, and (c) to the extent Servicer or MOHELA becomes liable for any damages of the types described in clause (ii) below to a third party as a result of a third party claim and Servicer or MOHELA, as the case may be, is entitled to indemnification with respect thereto under the provisions of Sections 10(a) and/or 10(b) above (in which case the maximum liability shall be limited to the amount of the indemnification obligation):   (i) the maximum liability of Servicer to MOHELA as a result of a breach of any provision of this Agreement by Servicer shall be limited to the direct damages incurred by MOHELA in connection with such breach, including any loss of servicing fee revenue pursuant to Section 5 hereof, and the maximum liability of MOHELA to Servicer as a result of a breach of any provision of this Agreement by MOHELA shall be limited to the direct damages incurred by Servicer in connection with such breach; and (ii) in no event shall Servicer be liable to MOHELA or MOHELA be liable to Servicer under or in respect of this Agreement for any punitive, exemplary, consequential, incidental or indirect damages (including, without limitation, loss of goodwill, loss of profits or revenues, loss of savings and/or interruptions of business) whether such damages occur prior or subsequent to, or are alleged as a result of, tortious conduct or breach of any of the provisions of this Agreement, even if such party has been advised of the possibility of such damages. Nothing in this Section shall limit or otherwise affect Servicer's obligation to pay or MOHELA's right to receive Deconversion Fees as provided for in this Agreement.

12. **Confidentiality.**

(a) For purposes of this Agreement, "Confidential Information" means and includes this Agreement and all schedules, exhibits, supplements and addenda to this Agreement, all data, information, records, correspondence, reports or other documentation relating to and identified with prospective, existing, or former student loan borrowers subject to this Agreement, contained or reflected in loan forms (including, without limitation, the Master Promissory Note) or otherwise obtained, received, prepared, generated or maintained by MOHELA or Servicer in connection with this Agreement or necessary to complete, process, fund, service or otherwise administer the Servicer Allocation and all proprietary and trade secret information of such party. Confidential Information will not, however, include any information which (i) was publicly known and made generally available in the public domain prior to the Effective Date; or (ii) becomes publicly known and made generally available after the Effective Date through no action or inaction of either of the parties hereto.

(b) Each of the parties hereto agrees to hold in confidence and not copy, release, disclose or utilize for its own or anyone else's benefit any Confidential Information, except (i) as necessary to fulfill its obligations under this Agreement, (ii) as expressly permitted by this Agreement, (iii) with the prior written consent of each party hereto, or (iv) as required by applicable law. Each party shall also ensure that all of its officers, directors, employees and independent contractors abide by the terms of this Section 12.

(c) In the event that either party becomes legally compelled to disclose any of the Confidential Information pursuant to a valid and effective subpoena or order issued by a court of competent jurisdiction, or pursuant to an open records request under federal, state, or local law, such party shall, to the extent legally practicable, provide the other party with prompt notice before such information is disclosed so that the other party may seek, before such disclosure is made, a protective order or other appropriate remedy at its own expense or waive compliance with this provision of this Agreement.

(d) MOHELA may now or in the future be subject to the provisions of existing or future open records laws applicable to entities such as MOHELA. To the extent it is so subject, the representations, warranties, covenants and agreements of MOHELA herein are modified to reflect that it must comply with such laws.

13. **Power and Authority.** Each party hereto represents and warrants that it has, and its officers acting on its behalf have, full legal authority to engage in the transactions contemplated by this Agreement; the execution and delivery of this Agreement, the consummation of the transactions herein contemplated and compliance with the terms, conditions and provisions of this Agreement have been duly authorized by all necessary corporate or governmental action on the part of each party. This Agreement constitutes a valid and binding obligation of each party and is enforceable against each party in accordance with its terms, and no consent, approval or authorization of any government or governmental body is required in connection with the consummation of the transactions herein contemplated.

7

14. **Waivers and Modifications.** The terms and conditions of this Agreement cannot be waived or modified unless done so in writing with such written waiver or modification being signed by each party hereto. No failure on the part of either party to exercise, and no delay in exercising, any right hereunder will operate as a waiver thereof; nor will any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

15. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri without regard to its conflicts of laws principles.

16. **Counterparts; Facsimile Signatures.** This Agreement may be executed and delivered in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures to this Agreement may be given by facsimile or other electronic transmission, and such signatures are fully binding on the party sending the same.

17. **Severability.** In the event any provision of this Agreement shall be held to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein that may be given effect without the invalid, illegal or unenforceable provision shall not in any way be affected or impaired thereby.

18. **Notices.** Any notice, request, report, demand, consent, confirmation or other communication under this Agreement shall be in writing and delivered in person or sent by facsimile or other electronic transmission, nationally recognized overnight courier or registered or certified mail, return receipt requested and postage prepaid, to the applicable party at its address set forth on the signature pages hereof, or at such other address or facsimile number as any party hereto may designate as its address or facsimile number for communications under this Agreement by notice so given. Such notices shall be deemed effective on the day on which delivered or sent if delivered in person or sent by facsimile or other electronic transmission (with answerback confirmation received), on the first (1st) business day after the day on which sent, if sent by nationally recognized overnight courier or on the third (3rd) business day after the day on which mailed, if sent by registered or certified mail.

19. **Forwarding Communications.** Except as otherwise provided herein, Servicer agrees to forward promptly to MOHELA any documents or notices of activity pertaining to the Servicer's Transferred Allocation subject to this Agreement. Except as otherwise provided herein, MOHELA agrees to forward promptly to Servicer any documents or notices relative to any liability or potential liability of Servicer under this Agreement.

20. **Assignment; Successors and Assigns; Delegation.** Neither party hereto shall have the right to assign, in whole or in part, this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld. Nothing in this Agreement shall be construed to prohibit the delegation or subcontracting by MOHELA of any of its obligations or duties hereunder to any third party including, without limiting the generality of the

foregoing, to PHEAA. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

21. **Arbitration.** All controversies and claims arising under or relating to this Agreement shall be resolved by arbitration. The arbitration shall be administered by the American Arbitration Association and is to be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The arbitration shall be held before a panel of three arbitrators, each of whom shall be independent of the parties. No later than 15 days after the arbitration begins, each party shall select an arbitrator and request the two selected arbitrators to select a third neutral arbitrator. The arbitration shall be conducted in St. Louis County, Missouri. The arbitrators are to apply Missouri law, without regard to its choice of laws principles. The arbitrators may award costs and attorneys fees to either party. The arbitrators' award shall be final and binding upon the parties, unless vacated or modified upon motion to a court of competent jurisdiction, and judgment may be entered on the award by the Circuit Court for St. Louis County, Missouri or the United States District Court for the Eastern District of Missouri, or such other court as may have jurisdiction over the parties and the subject matter. Each party consents to the jurisdiction of the Circuit Court for St. Louis County and the United States District Court for the Eastern District of Missouri for purposes of any proceedings to confirm, vacate, modify or amend the award.

22. **Force Majeure.** MOHELA and Servicer shall be excused from any breach of or failure to perform under this Agreement if performance is prohibited or prevented by an applicable law, rule or regulation or if such breach or failure results from any acts of God, strikes or other labor disputes, failures of third parties, war, riots or civil disturbances of any cause beyond such party's reasonable control which hinders or prevents its performance under this Agreement.

23. **License**. MOHELA is licensed to use Servicer's name, trade name and any other identifying information of Servicer (including identifying logos, copyrights, trademarks and service marks), provided that such use is related to the performance of this Agreement .

24. **Further Assurances**. At any time and from time to time after the Effective Date, the parties shall execute and/or deliver any documents, instruments of transfer or assignment, files and records and do all acts and things as may reasonably be required to carry out the intent of the parties under this Agreement.

25. **Independent Contractor Status.** This Agreement does not constitute a hiring by either party. It is the parties' intention that each party hereto shall have an independent contractor status and not be an employee of the other party for any purposes, including, but not limited to, the application of federal, state, or local tax or labor laws or regulations. This Agreement shall not be considered or construed to be a partnership or joint venture, and neither party shall be liable for any obligations incurred by the other party unless specifically authorized in writing. Except as specifically set forth herein, neither party shall act as an agent of the other party, ostensibly or otherwise, nor bind the other party in any manner.

26. **Audits/Reviews.** On a semi-annual basis, Servicer shall be granted access, at Servicer's sole expense, to information necessary to verify the calculation of the fees paid to

9

Servicer, and the appropriateness of the Ongoing allocations attributed to Servicer. Upon mutual agreement, a third party can be engaged, at Servicer's sole expense, to perform this verification.

*[Signature page follows]*

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BETWEEN THE PARTIES.

IN WITNESS WHEREOF, MOHELA and Servicer have executed this Agreement for Teaming Arrangement to Service Student Loans Pursuant to FSA's Solicitation (NFP-RFP-2010) and the MOHELA Contract as of the date first stated above.

IOWA STUDENT LOAN
LIQUIDITY CORPORATION

By: *[signature]*
Print Name: Steven W. McCullough
Title: President
6/11/15
Address:

6775 Vista Drive
West Des Moines, IA  50266

HIGHER EDUCATION LOAN
AUTHORITY OF THE STATE OF
MISSOURI

By: *[signature]*
Print Name: Raymond H. Bayer, Jr.
Title: Executive Director and Chief
        Executive Officer

Address:

633 Spirit Drive
Chesterfield, Missouri  63005

11

# EXHIBIT A

## CONTRACT BETWEEN MOHELA AND FSA (Contract No. ED-FSA-11-D-0012)

Execution Version 6-11-15